SEND

ENTER

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| HECTOR M. CHAIREZ, | ) | No. EDCV 05-1174-RC |
| | ) | |
| Plaintiff, | ) | |
| | ) | OPINION AND ORDER |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE,[1] | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Plaintiff Hector M. Chairez filed a complaint on January 10, 2006, seeking review of the Commissioner's decision denying his application for disability benefits. The Commissioner answered the complaint on May 30, 2006, and the parties filed a joint stipulation on July 20, 2006.

**BACKGROUND**

**I**

On February 12, 2002 (protective filing date), plaintiff applied

---

[1] Pursuant to Fed. R. Civ. P. 25(d)(1), Michael J. Astrue is substituted as the defendant in the action.

for disability benefits under the Supplemental Security Income ("SSI") program of Title XVI of the Act, 42 U.S.C. §§ 423, 1382(a), claiming an inability to work since October 20, 1997, due to a back injury. Certified Administrative Record ("A.R.") 92-96, 122.  The plaintiff's application was denied initially on April 22, 2002, and was denied again on November 15, 2002, following reconsideration.  A.R. 48-57. The plaintiff then requested an administrative hearing, which was held before Administrative Law Judge Mason D. Harrell, Jr. ("the ALJ") on August 21, 2003.  A.R. 58, 410-35.  On September 8, 2003, the ALJ issued a decision finding plaintiff is not disabled.  A.R. 38-46.  The plaintiff appealed this decision to the Appeals Council, which on August 6, 2004, remanded the matter to the ALJ for further proceedings.[2]  A.R. 68-72.

On December 8, 2004, the ALJ held another administrative hearing. A.R. 436-50.  On February 22, 2005, the ALJ issued a decision again finding plaintiff is not disabled.  A.R. 13-24.  The plaintiff appealed this decision to the Appeals Council, which denied review on December 1, 2005.  A.R. 5-12.

**II**

The plaintiff, who was born in Mexico on June 18, 1966, is currently 40 years old.  A.R. 89, 98, 108-10.  He has a tenth-grade education, has trained as a security guard, and has previously worked

---

[2] Meanwhile, plaintiff filed another application for SSI benefits on April 20, 2004, which was denied on August 20, 2004. A.R. 73-77, 118-20.  On August 6, 2004, the Appeals Council ordered the new application associated with the pending application for the ALJ's further consideration.  A.R. 71.

2

as a machine operator.  A.R. 123, 128, 141-48, 167-74.

Plaintiff has a history of work-related injuries dating back to 1987, when he initially injured his back and subsequently underwent a lumbar laminectomy and discectomy at L5-S1.  A.R. 187, 190.  He eventually returned to work and subsequently sustained three or four work-related injuries to his head, neck, spine, and left shoulder between November 26, 1996, and October 20, 1997.  A.R. 189, 289-90.

On November 14, 1997, Philip Sobol, M.D., an orthopedic surgeon, examined plaintiff, diagnosed him with left shoulder tendinitis, bursitis, and impingement syndrome, and cervicotrapezial musculoligamentous sprain/strain and opined plaintiff is temporarily totally disabled for 4-6 weeks.  A.R. 288-300.  On November 21, 1997, plaintiff underwent lumbar spine and right lower extremity electrodiagnostic studies, which revealed no abnormalities.  A.R. 251.  A left shoulder MRI performed December 4, 1997, revealed tendinosis of the supraspinatus tendon, and a lumbar spine MRI obtained the same day, showed there is desiccation, narrowing and mild protrusion of the disc at L5-S1.  <u>Id.</u>  On December 31, 1997, Dr. Sobol reexamined plaintiff and recommended left shoulder arthroscopy.  A.R. 281-87.

On April 14, 1998, plaintiff underwent left shoulder arthroscopic surgery, consisting of subacromial decompression and cuff debridement.  A.R. 262.  On August 31, 1998, plaintiff had a lumbar spine MRI, which revealed post-surgical changes and a 2-3 mm. diffuse disc protrusion at L5-S1.  A.R. 251.  On December 9, 1998, Dr. Sobol reexamined plaintiff and noted plaintiff has scar tissue formation and residual

2-3 mm. diffuse disc protrusion, musculoligamentous cervical, trapezius and thoracolumbar sprain/strain syndromes, and muscle contraction headaches. A.R. 247-60, 395-408. Dr. Sobol opined plaintiff was permanent and stationary[3] and a qualified injured worker[4] who should be limited to light work,[5] with no repetitive movements and/or prolonged posturing of the head and neck, no repetitive overhead work with both upper extremities or work over the shoulder level with his left upper extremity, and no forceful pushing or pulling. A.R. 255-56, 403-04.

On April 8, 1999, William H. Mouradian, M.D., an orthopedic

---

[3] Under the California workers' compensation system, "[a] disability is considered 'permanent and stationary' for workers' compensation purposes 'after the employee has reached maximum medical improvement or his or her condition has been stationary for a reasonable period of time.'" Booth v. Barnhart, 181 F. Supp. 2d 1099, 1103-04 n.3 (C.D. Cal. 2002) (citations omitted); Robertson v. Workers' Comp. Appeals Bd., 112 Cal. App. 4th 893, 897, 5 Cal. Rptr. 3d 485 (2003).

[4] Under the California's workers' compensation system "'[a]n employer is required to provide vocational rehabilitation '[w]hen an employee is determined to be medically eligible, i.e., a Qualified Injured Worker.'" Gamble v. Workers' Comp. Appeals Bd., 143 Cal. App. 4th 71, 81, 49 Cal. Rptr. 3d 36 (2006) (citations omitted). "'Medical eligibility contemplates the injured worker will be permanently precluded from returning to his or her usual occupation or position held at the time of the injury.'" Id. (citation omitted).

[5] Under the version of California's workers' compensation guidelines then in effect, light work meant the individual "can do work in a standing or walking position, with a minimum of demands for physical effort." Schedule for Rating Permanent Disabilities, Spine and Torso Guidelines, 2-15 (Labor Code of California, April 1997). The Schedule for Rating Permanent Disabilities was revised, effective January 2005.

surgeon, conducted plaintiff's agreed medical examination,[6] and diagnosed plaintiff with cervical spine strain and sprain, with residual myofascial complaints. A.R. 188-203. Dr. Mouradian opined plaintiff was permanent and stationary and should be precluded from heavy work,[7] overhead lifting and lifting away from the body, maintaining the head and neck in one position for prolonged periods, repetitive motion of the head and neck to the extremes, repetitive overhead work, and repetitive forceful pushing and pulling. A.R. 196-97. On March 23, 2000, Dr. Mouradian opined plaintiff cannot perform his past work as a machine operator and is a qualified injured worker. A.R. 187.

On April 10, 2002, David L. Drake, M.D., an orthopedic surgeon, examined plaintiff and diagnosed him with lumbosacral spine degenerative disc disease, chronic cervical spine musculoligamentous strain, and probable decompression. A.R. 204-08. Dr. Drake opined plaintiff can occasionally lift and carry 50 pounds and frequently lift and carry 25 pounds, can stand and/or walk for 6 hours in an 8-hour day with breaks every 2 hours, and was otherwise not restricted.

---

[6] Under California worker's compensation law, an "agreed medical examiner [is] chosen by the parties because of his expertise and neutrality." Power v. Workers' Comp. Appeals Bd., 179 Cal. App. 3d 775, 782, 224 Cal. Rptr. 758 (1986).

[7] Under the version of California's workers' compensation guidelines then in effect, a disability precluding heavy work "contemplates the individual has lost approximately 50% of pre-injury capacity for performing such activities as bending, stooping, lifting, pushing, pulling, and climbing or other activities involving comparable physical effort." Schedule for Rating Permanent Disabilities, Spine and Torso Guidelines, 2-14 (Labor Code of California, April 1997).

A.R. 208.

On October 24, 2002, Laurence Meltzer, M.D., an orthopedic surgeon, examined plaintiff and opined plaintiff had unsubstantiated complaints of cervical spine and ankle pain. A.R. 218-25. Dr. Meltzer further opined that "although [plaintiff] may have minimal residual discomfort in his low back since he does have some muscle tightness, . . . this could be easily treated with [a] gentle exercise and stretching program" and plaintiff is markedly exaggerating his symptoms because his range of motion was only half of that demonstrated in April 2002. A.R. 224. Finally, Dr. Meltzer opined plaintiff can lift and carry 50 pounds occasionally and 25 pounds routinely, stand, walk and sit for 6 hours in a 8-hour work day with appropriate breaks, and occasionally stoop, kneel or crouch, but should not work with his right arm above shoulder level. A.R. 225.

On December 4, 2002, Antoine Roberts, M.D., an orthopedic surgeon, examined plaintiff in Dr. Sobol's absence, and diagnosed plaintiff with a cervical sprain/strain and a 2-3 mm. recurrent disc protrusion. A.R. 237-46, 385-94. On December 16, 2002, plaintiff underwent electromyography and nerve conduction studies of the lumbar spine and lower extremities, which were normal. A.R. 301-06, 379-84. A lumbar spine MRI performed December 23, 2002, revealed L5-S1 spondylosis[8] and postoperative fibrous scarring at L5-S1, but no disc protrusion or stenosis. A.R. 236, 378. Dr. Sobol subsequently

---

[8] Spondylosis is "a general term for degenerative changes due to osteoarthritis." Dorland's Illustrated Medical Dictionary, 1684 (29th ed. 2000).

6

1  recommended further spinal surgery, consisting of anterior
2  decompression and fusion at L4-L5.  A.R. 233.

4       On February 2, 2004, plaintiff was admitted to Centinela Hospital
5  Medical Center where he underwent L5-S1 lumbar decompression surgery.
6  A.R. 310-27.  Dr. Sobol continued to treat plaintiff, whom he opined
7  should remain off work on temporary total disability and should use a
8  cane and rigid back brace, as needed.  A.R. 328-39, 350-77.  When last
9  examined on November 15, 2004, Dr. Sobol opined plaintiff was still
10 unable to work for at least 6-8 weeks and should continue with home
11 exercises and to use a cane, as needed.  A.R. 350.

13      Medical expert Samuel Landau, M.D., testified at the
14 administrative hearing that plaintiff has lumbosacral spine
15 degenerative disc disease treated with discectomies and laminectomies
16 in 1987 and 2004, persistent low back pain, chronic neck sprain,
17 headaches, and left shoulder pain treated with arthroscopic surgery,
18 and none of these conditions meet or equal a listed impairment.  A.R.
19 440-45.  Dr. Landau opined plaintiff can lift and carry 20 pounds
20 occasionally and 10 pounds frequently; he can stand and walk for 2
21 hours out of an 8-hour day and sit for 6 hours out of 8 with normal
22 breaks and provision to stand and stretch as needed, perhaps 1-3
23 minutes an hour; he cannot hold his head in one position for longer
24 than 15-30 minutes at a time; he can occasionally work above shoulder
25 level, and he should use a cane and back brace, as needed.  A.R. 441-
26 42.
27 //
28 //

**DISCUSSION**

**III**

The Court, pursuant to 42 U.S.C. § 405(g), has the authority to review the Commissioner's decision denying plaintiff disability benefits to determine if his findings are supported by substantial evidence and whether the Commissioner used the proper legal standards in reaching his decision. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007); Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).

The claimant is "disabled" for the purpose of receiving benefits under the Act if he is unable to engage in any substantial gainful activity due to an impairment which has lasted, or is expected to last, for a continuous period of at least twelve months. 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). "The claimant bears the burden of establishing a prima facie case of disability." Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996); Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996).

The Commissioner has promulgated regulations establishing a five-step sequential evaluation process for the ALJ to follow in a disability case. 20 C.F.R. § 416.920. In the **First Step**, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 416.920(b). If not, in the **Second Step**, the ALJ must determine whether the claimant has a severe impairment or combination of impairments significantly limiting him from performing basic work activities. 20 C.F.R. § 416.920(c). If so, in the **Third Step**, the ALJ must determine whether the claimant has

an impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. § 404, Subpart P, App. 1. 20 C.F.R. § 416.920(d). If not, in the **Fourth Step**, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform his past work. 20 C.F.R. § 416.920(f). If not, in **Step Five**, the burden shifts to the Commissioner to show the claimant can perform other work that exists in significant numbers in the national economy. 20 C.F.R. § 416.920(g).

Applying the five-step sequential evaluation process, the ALJ found plaintiff has not engaged in substantial gainful activity since the alleged onset of disability. (Step One). The ALJ then found plaintiff has "degenerative disc disease of the lumbosacral spine status post[-]discectomy and laminectomy in 1987 and 2004, with persistent low back pain, status post[-]arthroscopic surgery of the left shoulder with residual pain symptoms, chronic neck sprain, and headaches[,]" which are severe impairments (Step Two); however, he does not have an impairment or combination of impairments that meets or equals a Listing. (Step Three). The ALJ next determined plaintiff is unable to perform his past relevant work. (Step Four). Finally, the ALJ concluded plaintiff has the residual functional capacity to perform a significant number of jobs in the national economy; therefore, he is not disabled. (Step Five).

## IV

A claimant's residual functional capacity ("RFC") is what he can still do despite his physical, mental, nonexertional, and other

9

limitations.  Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001); Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).  Here, the ALJ found plaintiff has the RFC:

> to lift and/or carry 10 pounds frequently and 20 pounds occasionally.  Out of an 8-hour workday, [plaintiff] is able to stand and/or walk for 2 hours with a cane and back brace, as needed.  He is able to sit for 6 hours with normal breaks and provision to stand and stretch as needed, estimated to require one to three minutes per hour.  [Plaintiff] has to move his head every 15 to 30 minutes and he can do occasional to frequent head and neck motion, and head positioning.  He can occasionally work above shoulder level on both sides and he is able to occasionally bend and stoop.

A.R. 24.  However, plaintiff contends the ALJ's RFC finding is not supported by substantial evidence because the ALJ failed to properly consider the opinions of his treating physician, Dr. Sobol.  The plaintiff is correct.

   The medical opinions of treating physicians are entitled to special weight because the treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual."  Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987); Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir. 2001); see also 20 C.F.R. § 416.927(d)(2) (generally providing more weight is given to treating sources "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of

10

your medical impairment(s). . . ."). Therefore, the Commissioner must provide clear and convincing reasons for rejecting the uncontroverted opinion of a treating physician, Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003), "[e]ven if [a] treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record." Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998); Bayliss, 427 F.3d at 1216.

Here, plaintiff contends the ALJ erred in assessing Dr. Sobol's opinions since Dr. Sobol found plaintiff was temporarily totally disabled from December 4, 2002, through at least November 15, 2004. A.R. 229, 250. The ALJ considered Dr. Sobol's temporary total disability assessments, stating:

> The undersigned finds that these evaluations were conducted in connection with a worker's compensation claim and . . . prepared in anticipation of litigation. Furthermore, [Dr. Sobol's] expressions of temporary total disability can reasonably be interpreted as referring to an inability of the [plaintiff] to perform his usual and customary employment and do[] not state the [plaintiff] is disabled from all work activity. Therefore, the undersigned gives some limited weight to these expressions, which are not inconsistent with the medical evidence and the opinions of the medical expert and vocational expert.

//

1 A.R. 21.

In analyzing medical opinions utilizing workers' compensation terminology, "the ALJ is entitled to draw inferences 'logically flowing from the evidence[,]'" Macri v. Chater, 93 F.3d 540, 544 (9th Cir. 1996) (quoting Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982)); Payan v. Chater, 959 F. Supp. 1197, 1203 (C.D. Cal. 1996), and "[t]he ALJ's decision . . . should explain the basis for any material inference the ALJ has drawn from those opinions so that meaningful judicial review will be facilitated." Booth, 181 F. Supp. 2d at 1106. Here, however, the ALJ misapprehended the meaning of the term "temporarily totally disabled" in Dr. Sobol's medical opinions.

Contrary to the ALJ's interpretation, "[t]he term 'temporarily totally disabled' [in workers' compensation terminology] means that an individual is 'totally incapacitated' and 'unable to earn any income during the period when he is recovering from the effects of the injury.'" Booth, 181 F. Supp. 2d at 1103 n.2 (citation omitted); Rissetto v. Plumbers & Steamfitters Local 343, 94 F.3d 597, 600, 605 (9th Cir. 1996); Herrera v. Workmen's Comp. Appeals Bd., 71 Cal. 2d 254, 257, 78 Cal. Rptr. 497, 499 (1969); see also Robinson v. Workers' Comp. Appeals Bd., 194 Cal. App. 3d 784, 792, 239 Cal. Rptr. 841 (1987) ("'The period of temporary total disability is that period when the employee is totally incapacitated for work and during which he may reasonably be expected to be cured or materially improved with proper medical attention[,]' or until his condition becomes permanent and stationary." (citations omitted)). Therefore, Dr. Sobol's opinion that plaintiff was temporarily totally disabled from December 4, 2002,

through at least November 15, 2004, means Dr. Sobol found plaintiff was unable to perform **any** work during that period; thus, Dr. Sobol's opinion cannot reasonably be interpreted to support the ALJ's RFC finding.

Nor is it significant that Dr. Sobol evaluated plaintiff for workers' compensation purposes, or that Dr. Sobol's opinions may have been obtained for purposes of litigation. An "ALJ may not disregard a medical opinion simply because it was initially elicited in a state workers' compensation proceeding, or because it is couched in terminology used in such proceedings." Booth, 181 F. Supp. 2d at 1105; Desrosiers v. Sec. of Health & Human Servs., 846 F.2d 573, 576 (9th Cir. 1988). Likewise, "[t]he purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them. . . . 'The [Commissioner] may not assume that doctors routinely lie in order to help their patients collect disability benefits.'" Lester v. Chater, 81 F.3d 821, 832 (9th Cir. 1996) (citation omitted)); see also Reddick, 157 F.3d at 726 (("[T]he mere fact that a medical report is provided at the request of counsel, or, more broadly, the purpose for which an opinion is provided, is not a legitimate basis for evaluating the reliability of the report.").

In short, the ALJ committed legal error in rejecting Dr. Sobol's medical opinion. As such, the ALJ's RFC finding is not supported by substantial evidence, and since the Step Five determination is based on the RFC finding, it, too, is not supported by substantial evidence.
//
//

**V**

When the Commissioner's decision is not supported by substantial evidence, the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); McCartey v. Massanari, 298 F.3d 1072, 1076 (9th Cir. 2002). "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." Benecke, 379 F.3d at 593. Here, since the ALJ failed to properly consider the opinions of Dr. Sobol, remand is the appropriate remedy. See Bunnell v. Barnhart, 336 F.3d 1112, 1116 (9th Cir. 2003) (affirming district court's remand when ALJ failed to provide adequate reasons for rejecting claimant's treating physicians' opinions); Harman v. Apfel, 211 F.3d 1172, 1180 (9th Cir.) (remanding for proper consideration of treating physician's determination claimant is "totally disabled"), cert. denied, 531 U.S. 1038 (2000).[9]

**ORDER**

IT IS ORDERED that: (1) plaintiff's request for relief is granted; and (2) the Commissioner's decision is reversed, and the action is remanded to the Social Security Administration for further proceedings consistent with this Opinion and Order, pursuant to sentence four of 42 U.S.C. § 405(g), and Judgment shall be entered accordingly.

DATE:   June 4, 2007                    /s/ Rosalyn M. Chapman
                                        ROSALYN M. CHAPMAN
                                        UNITED STATES MAGISTRATE JUDGE

---

[9] Having reached this conclusion, it is unnecessary to reach the other issue plaintiff raises, which does not warrant any further relief than granted herein.

R&R-MDO\05-1174.mdo- 6/4/07

14